UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TRAVIS DELANY WILLIAMS,                              Case No. 14-cv-452-PP

                      Plaintiff,

v.

NURSE LESLIE, NURSE TOM,
JANE DOE, NURSE PAULA,
PATRICK NOONAN, LT. FRIEND,
SGT. JACOBS, LIZ HOOD,
CAPTAIN WEARING,
CHRISTOPHER SCHMALING,
D.L. BERGUM, JOHN DOE,
NURSE BILL, KELLY,
JIM, NURSE NICOLE,
HERNANDEZ, EVANS,
VELA, ZIMMER,
POLASKI, PEARSON,
MASTRONARDI, ISFERDING,
SGT. LAVER, SGT. ANDERSON,
SGT. MELISSA, and A. GONZALEZ,

                      Defendants.

---

**ORDER GRANTING THE PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 2); STRIKING SUPPLEMENTAL COMPLAINT (DKT. NO. 6), THE AMENDED COMPLAINT (DKT. NO. 9), AND THE SECOND SUPPLEMENTAL COMPLAINT (DKT. NO. 14); GRANTING REQUEST FOR STATUS UPDATE AND FORMS (DKT. NO. 7); DENYING WITHOUT PREJUDICE MOTION TO APPOINT COUNSEL (DKT. NO. 8); DENYING REQUEST FOR COPY OF DOCKET (DKT. NO. 10); DENYING REQUEST FOR COPIES (DKT. NO. 11); AND GIVING THE PLAINTIFF A DEADLINE BY WHICH TO FILE A FINAL, AMENDED COMPLAINT**

---

       On April 18, 2014, the plaintiff—representing himself—filed a complaint alleging that the defendants failed to provide him with adequate medical care and treatment, in violation of the Fifth, Sixth, Seventh, Eighth, Eleventh and Fourteenth Amendments to the Constitution. Dkt. No. 1. Along with this

1

complaint, he filed a motion asking to be allowed to proceed without pre-paying the filing fee. Dkt. No. 2. On April 21, 2014, the court issued an order, indicating that the plaintiff would not have to pay the initial partial filing fee.

Since the date the plaintiff filed his original petition, he has filed a "supplemental complaint," Dkt. No. 6, an amended complaint, Dkt. No. 9, and a motion to substitute a party and to "supplement" the complaint, Dkt. No. 14. He also has filed various letters and motions asking why his complaint has not been screened, and a motion for the appointment of counsel, Dkt. No. 8.

The court first will address the time it has taken the court to review the plaintiff's various pleadings. The court acknowledges that from the time he filed his complaint until the date of this order, almost sixteen months have passed. The last order the plaintiff received from a judge was the order indicating that he didn't have to pay the partial filing fee—an order signed almost sixteen months ago. The court can understand the plaintiff's frustration at the length of time that has expired.

The plaintiff has alleged in several of his letters that he believes that the clerk's office for the Eastern District of Wisconsin is refusing to process his pleadings because he is indigent. He has noted that, in his previous place of incarceration, he had two fellow inmates whose complaints already had been screened; this fact lent support to his belief that the court was treating him differently in the way it reviewed his pleadings.

The court can assure the plaintiff that the clerk's office has received his pleadings, and has been docketing them. To date, there are seventeen docket

2

entries in the plaintiff's case, all but one of which are motions, letters, or other filings from the plaintiff. The clerk's office docketed pleadings in April, May, June, July, August, September, October, and November 2014—often multiple filings in the same month.

The court cannot speak to why the plaintiff received no rulings or responses between April and December 2014. During that period, the plaintiff's case was assigned to another judge. But on December 29, 2014, the plaintiff's case was reassigned to Judge Pepper--not because of anything the plaintiff did, but because Judge Pepper had joined the court as a new judge, and was reassigned a percentage of cases from each of the other judges on the court. Since Judge Pepper joined the court, she and her staff have been going through all of the new cases, trying to figure out which cases need what done. With a case load of over 200 cases, this process has taken more time than the court would like.

The court also notes that, once it began reviewing the plaintiff's pleadings, it ran into a problem that he himself identifies in some of his letters and motions. In his most recent motion to supplement his complaint, he asserts that the clerk's office incorrectly reflected on the docket the names of several of the defendants he has sued. Dkt. No. 14. The plaintiff may well be right, but the court confesses that it has had difficulty reading the names the plaintiff has listed in his various complaints. For some defendants, he lists titles ("Lt.," "Sgt.," "Nurse"); for others, he does not. For some defendants, he lists initials and last names, for others he lists only last names, for still others

3

he lists only first names, and sometimes it is hard to tell what the plaintiff lists because one can't tell whether he has put a comma between two names or not. The clerk's office can record only what it is able to read.

The court is aware that most inmates must write their pleadings by hand. Some people have better handwriting than others. It is easier to write neatly when one writes one paragraph than when one writes fifteen pages; one's hand gets tired. The clerk's office staff, and the court, do the best they can do to read all sorts of handwriting, and sometimes, we do not succeed. This can slow down the court's ability to process a case.

All of that being said, the court now has looked at the plaintiff's case, and at the various pleadings he has filed.

I.     **Motion to Proceed *In Forma Pauperis***

Title 28, United States Code, §1915(a) authorizes a court to allow a plaintiff to file a lawsuit without pre-paying the $350 filing fee if that person submits an affidavit showing that he is unable to pay the fee all at one time. The plaintiff submitted his affidavit and his trust account statement on April 18, 2014, Dkt. Nos. 2, 3; the court finds that he does not have the funds to pay the filing fee all at once. The court already has ordered that the plaintiff does not have to pay the initial partial filing fee required by §1915(b)(1). The court will grant the plaintiff's request to proceed without pre-paying the filing fee, and will allow the plaintiff to pay the $350 filing fee over time, out of his inmate custodial account, in the manner described at the end of this order.

4

## II. Supplemental Complaint (Dkt. No. 6), Amended Complaint (Dkt. No. 9), and Supplemental Complaint (Dkt. No. 14)

The plaintiff is correct that 28 U.S.C. §1915A requires a court to review, "as soon as practicable after docketing," a complaint in a §1983 action, to determine whether the complaint states frivolous claims or claims upon which the court can't grant relief. The problem here is that the plaintiff has filed several complaints, and they do not comply with the Federal Rules of Civil Procedure. The plaintiff filed his first supplemental complaint on May 14, 2014—less than a month after he filed the complaint. Dkt. No. 6. He then filed an amended complaint a month later. Dkt. No. 9. He filed his second supplemental complaint on September 2, 2014. Dkt. No. 14.

In his original, 18-page complaint, the plaintiff named Correctional Healthcare, Leslie Doe, Nurse Tom Doe, Nurse Practitioner Jane Doe, Nurse Paula Doe, Patrick J. Noonan, Lieutenant Friend, Sgt. Jacobs, Melissa A. Gonzalez, Captain Wearing, Christopher Schmaling, Liz Hood, Wisconsin State Trooper D.L. Bergum, and Trooper John Doe. Dkt. No. 1. He alleged that some of these defendants failed to provide him with adequate medical care for leg, hip and eye problems over a period of time between the summer of 2013 and February or so of 2014. He alleges that other defendants held illegal hearings in December 2013 and January 2014, hearings that violated his due process rights. He alleges that other defendants placed him in unconstitutional conditions of confinement—being put with someone else in a single-occupancy cell, being denied hygiene products, being given non-regulation mattresses, being denied footwear. He alleges that still other defendants—the two state

5

trooper defendants—subjected him to excessive force when transporting him from Wheaton Franciscan Hospital. He alleges that defendant Hood denied him access to the courts by not giving him envelopes with prepaid postage and limiting his access to postage. There are many, many claims in the original complaint, against different defendants involved in different events.

In the supplemental complaint he filed a month later, the plaintiff named Sgt. Chavez, Sgt. Anderson, Sgt. Lowry, Nurse Nicole, C/O Pearson, C/O Olk, C/O Ramos, C/O Hernandez, C/O Zimmer, C/O Vela, Deputy Polasky, C/O Evans, and C/O Mastroniardi. Dkt. No. 6. He had not named any of these defendants in his original complaint. His claims against these defendants take place in April and May, 2014. In this nine-page supplement, he lays out a string of allegations against the defendants, some having to do with his living conditions (the water in his cell didn't work for a long period of time), some having to do with his treatment (defendants accusing him of having a new tattoo, laughing at him), some having to do with his medical condition (denying him a double mattress, a nurse spitting in his medication, delay in providing him medical treatment), some having to do with retaliating against him for filing his lawsuit. At the end of the supplement, he alleges that all the new defendants violated the Fourth, Seventh, Eighth, Eleventh and Fourteenth Amendments, the Due Process Clause and the Equal Protection Clause. Dkt. No. 6 at 7.

In the June 19, 2014 amended complaint, the plaintiff named many of the defendants he'd named in the earlier complaints, but also added some new

6

names ("Nurse Bill," "Kelly," "Jim"). Dkt. No. 9. He indicated that he was "dropping the title Correctional Healthcare." In this fifteen-page complaint, he alleged violation of the Americans with Disabilities Act, deliberate indifference to serious medical need, and violations of the Due Process Clause.

In the September 2, 2014 supplement, the plaintiff asserted that the clerk's office had misread his list of defendants, and he specified that his caption "should have" contained the following names: Leslie Doe, Nurse Tom, Jane Doe Nurse Practitioner, Nurse Paula, Nurse Nicole, Nurse Bill, Kelly, Patrick Noonan, Lt. Friend, Sgt. Jacobs, Captain Wearing, Liz Hood, Christopher, Schmaling, D.L. Bergrom, John Doe Trooper, Evans, Hernandez, Vela, Zimmer, Ramos, Jim, Polaski, Pearson, Mastronardi, Isferding (a new name), Sgt. Lauer (another new name), Sgt. Anderson, Sgt. Melissa A. Gonzalez. Dkt. No. 14 at 1. This complaint alleged retaliation in the month of June, 2014; denial of due process in July, 2014; and a cell that is cold and smells of mildew and urine, denial of medical assistance, and more retaliation during an unspecified time period.

The original complaint, as noted above, contains numerous, unrelated claims against numerous, unrelated defendants. Some of the claims in the complaint appear to implicate the plaintiff's constitutional rights, but the complaint violates the Federal Rules of Civil Procedure because it improperly brings unrelated claims against different groups of defendants in a single case.

In George v. Smith, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit considered a case in which a prisoner had joined 24 defendants and 50 claims

7

in one lawsuit. Id. at 606. The court first looked at Fed. R. Civ. P. 18(a), which provides, "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternate claims, as many claims as it has against an opposing party." The court found that while "multiple claims against a single party are fine," "[u]nrelated claims against different defendants belong in different suits" to prevent confusion and to prevent prisoners from dodging the fee payment or three strikes provisions in the Prison Litigation Reform Act. Id. at 607. The court held, "Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." Id.

The George court also reminded district courts that Fed. R. Civ. P. 20 applies as much to prisoner cases as it does to any other case. Id. at 607. Under Rule 20, joinder of multiple defendants into one action is proper only if the complaint asserts any right to relief "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action."

The plaintiff's complaint violates Rules 18 and 20 because it states unrelated claims against different defendants. Simply put, the plaintiff's deliberate indifference claims, due process claims, access-to-courts claims, excessive force claims and other claims belonged in separate lawsuits.

The May 14, 2014 supplemental complaint, the June 19, 2014 amended complaint, and the September 2, 2014 supplemental complaint made the

8

problem worse, adding more defendants and more claims each time. In addition, those complaints did not comply with other civil procedure rules.

Fed. R. Civ. P. 15(d) authorizes a court, if a party files a motion and gives notice, to allow that party to serve supplemental pleadings alleging events or transactions that happened after the initial pleading. The court has discretion in deciding whether to allow a plaintiff to file a supplemental pleading. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). A court properly refuses to allow a party to file a supplemental pleading under Rule 15(d) when there is "any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." Foman, 371 U.S. at 182; *see* Glatt v. Chicago Park Dist., 87 F.3d 190, 194 (7th Cir. 1996) (applying Foman standard to motions under Fed.R.Civ.P. 15(d)).

The plaintiff did not file a motion asking the court for permission to file either the May 14 or the September 2 supplements. Had he filed such motions, the court would not have granted them, because of the joinder problem the court points out above.

The plaintiff also did not file a motion asking the court to allow him to file the June 19, 2014 amended complaint. Fed. R. Civ. P. 15(a)(2) states that if a party tries to amend a pleading more than twenty-one days after serving it, that party must have the court's permission. The plaintiff filed his amended

9

complaint two months after he filed the original; he needed the court's permission to file the amended complaint. Even had he asked for the court's permission, the court would not have granted it, again because of the joinder problems the court identifies above.

The court is going to allow the plaintiff *one* opportunity to submit *one* amended complaint. He must select one series of events—either the events surrounding alleged deliberate indifference to his serious medical needs, or the events surrounding the alleged substandard living conditions, or the events surrounding the prison staff's denial of due process—and must name only those defendants who he believes to have been involved in that series of events. He must bring any claims relating to other events in separate lawsuits. The court will give the plaintiff a deadline by which to file this amended, final complaint. If the plaintiff complies with the court's requirements, and files the complaint by the deadline the court sets, the court will screen that complaint.

In the hope of assisting the plaintiff in complying with the court's requirements, the court is including with this order a packet of materials entitled "Guide to Filing Prisoner Complaints Without a Lawyer in Federal District Court." This guide contains tips and suggestions for filing a complaint that a court, and defendants, can review; following these tips and suggestions increases the likelihood that the court can review the plaintiff's amended complaint in a timely fashion, and clearly understand the relief he requests and the defendants from whom he requests it.

**III.  Request for Status Update and Forms**

On November 26, 2014, the plaintiff wrote to the clerk of court, asking about the status of several things, and asking for a form complaint for a §1983 action.

The plaintiff asked about the status of his motion for the appointment of counsel. The court's ruling on that motion appears later in this order.

The plaintiff asked about the status of this case. This order is the court's response to that request.

The plaintiff asked about the status of <u>Williams v. Dr. Ortiz</u> (Case No. 14-cv-792-PP). The court has that case on its list of cases to screen. He also asks about the status of <u>Williams v. Stauchie</u> (Case No. 14-cv-1078-PP). The court screened that complaint on June 4, 2015, dismissed some of the defendants, and asked the marshal's service to serve the complaint on the remaining defendants. Once the court has heard from all of the defendants, it will issue a scheduling order.

The plaintiff notified the clerk of his change of address to the Kenosha County Jail. The court notes, however, that the Wisconsin Department of Corrections Inmate Locator Service shows that the plaintiff is now in the Columbia Correctional Institution.

As to the plaintiff's request for a form §1983 complaint, the court has enclosed a form complaint with the "Guide to Filing Prisoner Complaints" packet.

## IV. Motion to Appoint Counsel

In his June 19, 2014 motion for appointment of counsel, the plaintiff states that his case is complex in regard to his need to investigate the facts and gather discovery. He states that he needs a lawyer to elicit testimony to assist the fact-finder. He notes that he is indigent, and that he receives only limited paper and envelopes from prison staff. Finally, he states that he has written to lawyers, and has received only two responses. Dkt. No. 8. He attached to this motion a statement that two attorneys had responded that they could not take his case. He listed ten (10) other attorneys to whom he'd written letters, but who had not responded. Dkt. No. 8-1.

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). Before the court makes that decision, the plaintiff has to show the court that he has made a reasonable effort to hire private counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). Only after the plaintiff shows that he's made that reasonable attempt to hire counsel will the court decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." *Id.*

12

In this case, the plaintiff has demonstrated to the court through his attachment to his motion that he has tried to find a lawyer to represent him. He reached out to twelve attorneys; only two responded, and they declined to take his case. The court finds, therefore, that the plaintiff has met the first requirement under Pruitt.

At this point in the case, however, the court does not find that the plaintiff's case is so complex that he cannot handle it himself. The plaintiff argues that his case is complex because he named twenty-seven defendants, and alleged a number of violations. As the court has noted above, the rules do not allow the plaintiff to combine so many different claims against so many different defendants. If the plaintiff complies with this order, his amended complaint will be simpler and more straight-forward. The pleadings the plaintiff has submitted show that he is quite capable of describing what has happened to him, and naming the people who he believes violated his rights. It is too early in the case for hearings or testimony, so he does not need a lawyer to help him with that at this time. If the plaintiff files an amended complaint and the court allows him to proceed on that complaint, he can renew his request for counsel at a later date.

**V.     Request for Docket and Request for Copies**

The court will deny the plaintiff's June 20, 2014 request for a copy of the docket (Dkt. No. 10); this order lists, in various places, the defendants that the plaintiff has named in his various pleadings.

13

The court also will deny the plaintiff's June 27, 2014 request for a copy of the amended complaint. Dkt. No. 11. His request states that he received "only 15 pages" of the amended complaint. The June 19, 2014 amended complaint was fifteen pages long; the plaintiff received all of it. The court also notes for future reference that if the plaintiff wants copies of documents, he must submit payment for those copies at the $0.10 per page rate.

## VI.    Conclusion

The court **GRANTS** the plaintiff's motion to proceed *in forma pauperis*. (Dkt. No. 2). The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $350.00 filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payment to the clerk of the court each time the amount in the account exceeds $10, in accordance with 28 U.S.C. §1915(b)(2). The Secretary must clearly identify the payments by the case name and number assigned to the case.

The court **STRIKES** the plaintiff's May 14, 2014 supplemental complaint (Dkt. No. 6), the June 19, 2014 amended complaint (Dkt. No. 9), and the plaintiff's September 2, 2014 supplemental complaint (Dkt. No. 14). The court **ORDERS** that the plaintiff must file an amended complaint, which complies with this order and incorporates only one of his claims, by **August 31, 2015**. If he so chooses, the plaintiff may bring any unrelated claim(s) that he does not

14

bring in the amended complaint in a separate lawsuit(s). If the plaintiff files an amended complaint by the August 31, 2015 deadline, it will replace the original complaint, and the court will screen it in accordance with 28 U.S.C. § 1915A. If the plaintiff chooses not to file an amended complaint by the August 31 deadline, the court will dismiss the case without prejudice for failure to prosecute.

The court **GRANTS** the plaintiff's request for a status update and request for a form §1983 complaint. (Dkt. No. 7)

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for appointment of counsel. (Dkt. No. 8)

The court **DENIES** the request for a copy of the docket (Dkt. No. 10) and the request for copies (Dkt. No. 11).

The court will send a copy of this order to the warden of the institution where the plaintiff is confined.

Dated in Milwaukee this 8th date of July, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge