**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**TRAVIS DELANEY WILLIAMS,**

Plaintiff,

v. **Case No. 14-cv-452-pp**

**D.L. BERGUM,**
**TROOPER JOHN DOE,**
**CARRIE L. BELLEN,**
**NURSE LESLIE,**
**NURSE TOM,**
**NURSE NICOLE,**
**PATRICK J. NOONAN,**
**SERGEANT MELISSA A. GONZALES,**
**LIEUTENANT FRIEND,**
**CAPTAIN WEARING,**
**CHRISTOPHER SCHMALING, and**
**NURSE PRACTITIONER JANE DOE,**

Defendants.

---

**DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR A COURT ORDER (DKT. NO. 21), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 23), DENYING PLAINTIFF'S MOTION FOR DISCOVERY (DKT. NO. 27), DENYING PLAINTIFF'S MOTION FOR PRODUCTION OF DOCUMENTS (DKT. NO. 27), AND SCREENING PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 19)**

---

This case is before the court on a number of motions filed by the plaintiff, and for screening of his amended complaint (Dkt. No. 19).

## I. Screening of the Plaintiff's Complaint

### A. *The Law Governing Screening of Complaints*

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a

governmental entity. 28 U.S.C. §1915A(a). The court must dismiss part or all of a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous when "it lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the "factual contentions are clearly baseless." Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim,

a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B. *The Plaintiff's Allegations*

On May 8, 2013, defendant state troopers D.L. Bergum and John Doe arrested the plaintiff and took him to Wheaton All Saints Hospital in Racine. Dkt. No. 19, p. 4. The doctor told the troopers that the plaintiff was not able to walk due to preexisting injuries and new injuries from the car accident which had occurred that day (the state troopers allegedly rammed the car the plaintiff was driving). Id. The plaintiff alleges that the troopers ignored the doctor's statements, handcuffed the plaintiff, twisted his harms, and "forcefully dragged/walked [the plaintiff] down the hall to the police car." Id.

When they arrived at the Racine County Jail, the troopers did not tell anyone that the plaintiff had been in a car accident or that he could not walk. Id. The plaintiff alleges that the troopers did tell staff at the Jail that the plaintiff was combative and refused to cooperate. Id. Unknown Jail staff members dragged the plaintiff from the police car, down through the sally port and through the Jail. Id. They threw the plaintiff into a holding cell; the plaintiff hit his head on a wall and was knocked out. Id.

At some point, the plaintiff awoke and went through the intake process with defendant Carrie L. Bellen. Id. at 5. During the intake process, the plaintiff told Bellen that he was injured and needed a wheelchair and knee braces. Id. He also told her that he was involved in a bad car accident and reinjured his legs, knees, neck, and back; he questioned whether there should not have been after-care papers from the doctor. Id. Bellen said nothing and took items from the plaintiff; she did not say anything about the plaintiff

receiving medical care, pain pills, or a wheelchair. Id. The plaintiff refused to take intake processing photos and fingerprints. Id. The plaintiff was placed back in the cell and slept for days. Id. He missed several court dates. Id.

Days later, an unknown officer came with a wheelchair and took the plaintiff to a shower area to change the plaintiff into jail clothes and take his photos and fingerprints. Id. The officer then took the plaintiff to a cell in a second floor unit. Id.

The plaintiff alleges that he spent days on the unit unable to walk; he pulled himself along the floor like a lizard. Id. The plaintiff finally saw his criminal public defender (for what the plaintiff says was the second time), who got upset that the plaintiff's clothes were dirty and bloody. Id. The attorney spoke to a guard and told the guard that guard needed to get the plaintiff medical attention. Id. The plaintiff alleges that he was placed in segregation an hour after his attorney left. Id. at 6.

Days later, defendant Patrick J. Noonan told the plaintiff that he was placed in segregation because he could not walk. Id. Noonan stated that the plaintiff was classified as medical segregation. Id. However, the plaintiff was not permitted to have his cell door open like another inmate with that classification. Id. The plaintiff alleges that, at this point, he still had not seen anyone from medical. Id. Noonan did not relay to anyone the plaintiff's medical condition and need to be seen, even though he told the plaintiff numerous times that he would. Id. Noonan left the plaintiff dirty, bloody, and in pain. Id.

Nurse Tom finally screened the plaintiff for medical needs. Id. He came to the plaintiff's cell and expected the plaintiff to be able to walk. Id. The plaintiff told Nurse Tom that he needed a wheelchair, and Nurse Tom went and got one and then conducted a screening. Id. The plaintiff told Nurse Tom his medical condition and that he had been in an accident and was supposed to attend physical therapy. Id. The plaintiff also told Nurse Tom that he needed a wheelchair, knee braces, and pain pills he was taking before he was arrested. Id. The plaintiff offered to sign a medical release to get his records from his private doctor. Id. Nurse Tom said he would have the release form for the plaintiff to sign later that day, but he never brought it. Id. Nor did Nurse Tom note that the plaintiff needed a wheelchair or knee braces. Id. The plaintiff did not sign a medical release until approximately January 2014, "almost ten months later." Id.

Even after seeing the plaintiff a second time, Nurse Tom still did not get the plaintiff the prescription medication the plaintiff was taking before his arrest. Id. at 7. Nurse Tom did not note that the plaintiff needed a wheelchair and knee braces. Id. Nor did he give the plaintiff any medicine for his many cuts and abrasions. Id. Nurse Tom refused to give the plaintiff his medications on several occasions. Id. The plaintiff complained to his attorney, and Nurse Tom "mysteriously bec[ame] unemployed by the Racine County Jail." Id.

The plaintiff submitted more requests for medical attention, and another nurse saw him. Id. The nurse asked the plaintiff where he was picking up his medications, and the plaintiff said Walmart. Id. The plaintiff got his

medications about two weeks later, including Simvastatin, Lisinopril, Hydrochlorothiazide, and Acetaminophen. Id. He did not get his Tramadol. Id.

The plaintiff alleges that from May 2013 to April 2014, Nurse Practitioner Jane Doe denied the plaintiff's requests for pain pills, eye drops, a cotton blanket, a wheelchair, knee braces, and compression socks. Id. The plaintiff filed grievances, and finally got Ibuprofen three months after he requested it. Id.

The plaintiff saw Nurse Practitioner Jane Doe numerous times for an eye infection. Id. She prescribed Tears eye drops several times, which did no good. Id. The plaintiff alleges that she lied twice, saying the plaintiff would see the doctor about the infection. Id. The plaintiff did not see the doctor until a couple of months later, after his condition got worse. Id. at 7-8. The doctor immediately prescribed antibiotic eye drops. Id. at 8. When the plaintiff needed more eye drops, he submitted a sick call slip asking to see the doctor. Id. Nurse Practitioner Jane Doe blocked it and told the plaintiff she would renew his eye drops, request a wheelchair, and bring him medical releases to sign. Id. She did none of these things, which left the plaintiff in pain. Id.

The plaintiff filed a grievance, and Nurse Leslie saw the plaintiff. Id. She verbally approved the eye drops, but the plaintiff did not get them for over a month. Id. Nurse Leslie also told the plaintiff he would have access to a wheelchair, but that did not happen. Id. The plaintiff missed numerous court dates because he did not have a wheelchair. Id. Over a number of months, Nurse Leslie denied the plaintiff pain pills, a double mattress, knee braces,

wheelchair use, antibiotic eye drops, and foot care. Id. In March or April of 2014, she told the plaintiff that she knew he was in a lot of pain and needed surgeries, but there was nothing they were willing to do for him. Id. She asked when he was getting out and said he could get help then. Id.

During many healthcare screenings, defendant Nurse Nicole told the plaintiff that he would receive a cotton blanket, C-cream, eye drops, and a lactulose refill, but he never received any of them. Id. at 10. Nurse Nicole also assisted the doctor during many visits with the plaintiff. Id. She heard what the doctor said the plaintiff should be given, but the plaintiff never received any thing the doctor prescribed. Id. at 10-11. As a result, he incurred additional sick call and doctor co-pays. Id. at 11.

According to the plaintiff, defendant Lt. Friend interfered with the plaintiff's medical treatment. Id. at 9. The plaintiff alleges that Lt. Friend said he was part of the medical team, and thus was allowed to review the plaintiff's medical file, but that he denied the plaintiff's treatment as he saw fit. Id. Specially, Lt. Friend interfered with the plaintiff obtaining a double mattress and medication refills. Id. The plaintiff asserts that his pain pills should have been automatically renewed, but that Lt. Friend interfered such that the plaintiff had to go through sick call and have his pills renewed each time. Id.

The plaintiff wrote to defendants Sergeant Melissa A. Gonzales about his medical condition. Id. at 9. Gonzales responded that defendant Noonan already had told her the defendant's position, and told the plaintiff that she "[stood] by her officer," that the plaintiff would not be getting anything handicapped

accessible at the Jail and that the only times he would be able to use a wheelchair would be for court dates, medical screenings, and attorney visits. Id. The plaintiff rarely even got that much wheelchair use, and he missed many court dates. Id.

The plaintiff alleged that defendant Captain Wearing answered grievances the plaintiff wrote about the lack of medical care he received, but condoned the staff's actions. Id. at 10. Wearing ignored the plaintiff's statements about daily pain and swelling in his legs and offered no alternatives to the medical staff at the Jail. Id.

After the plaintiff filed this lawsuit, a separate contractor was brought in to review the plaintiff's medical file. Id. At that time, the plaintiff finally had x-rays taken, but he still received no relief from the discovered medical condition. Id. The plaintiff does not provide any detail regarding that medical condition. The plaintiff also alleges that he had one mattress in segregation before he filed this lawsuit, but was not able to keep any mattress in segregation after he filed the lawsuit, despite his (unspecified) medical condition.[1] Id. The plaintiff does not specify who made this decision regarding the mattress.

Finally, the plaintiff asserts that defendant Sheriff Christopher Schmaling condoned the actions of the staff and allowed Wearing to answer a letter the plaintiff had sent to Schmaling. Id.

[1] Earlier in the complaint, the plaintiff asserted that he needed a double mattress "to elevate [his] legs to reduce daily swelling and pain," but does not state what condition caused the swelling or pain. Id. at 9.

The plaintiff seeks to proceed on constitutional medical care claims and claims for violations of the Racine County Jail Healthcare Policy. Id. at 11. He seeks monetary damages, and suggests that he is still suffering from irreversible damage due to the defendants' actions. Id.

Although the plaintiff named each defendant in both his or her individual and official capacity, the complaint lays out facts relating only to individual conduct of the defendants in their individual capacities. The plaintiff has not alleged any facts that might prove some official policy or custom that caused a constitutional violation—facts he would have to demonstrate if he were suing the defendants in their official capacities. See, e.g., Potochney v. Doe, ___ F.Supp.2d ___, 2002 WL 31628214 at *3 (N.D. Ill. Nov. 21, 2001); Petty v. Cnty. of Franklin, Ohio, 478 F.3d 341, 349 (6th Cir. 2007). Because the plaintiff has alleged facts that support only claims against the defendants in their individual capacities, those are the only claims the court will consider.

C. *Application of the Law to the Allegations*

1. Medical Care Claims

The plaintiff alleges medical care claims regarding the state troopers who arrested him, and correctional and medical staff at the Jail.

Generally, a pretrial detainee's right to medical care is "derived from the Due Process Clause of the Fourteenth Amendment, which prohibits deliberate indifference to his serious medical needs." Burton v. Downey, 805 F.3d 776, 784 (7th Cir. 2015) (citing Pittman v. Cnty. of Madison, 746 F.3d 766, 775 (7th Cir. 2014)). "This standard is essentially the same as the Eighth Amendment's

prohibition against cruel and unusual punishment, which applies to convicted prisoners." Burton, 805 F.3d at 784 (citing Smego v. Mitchell, 723 F.3d 752, 756 (7th Cir. 2013)).

However, "the Fourteenth Amendment's due process protections only apply to a pretrial detainee's confinement conditions after he has received a judicial determination of probable cause." Williams v. Rodriguez, 509 F.3d 392, 403 (7th Cir. 2007) (citing Lopez v. City of Chicago, 464 F.3d 711, 719 (7th Cir. 2006)). "Claims regarding conditions of confinement for pretrial detainees . . . who have not yet had a judicial determination of probable cause . . . , are instead governed by the Fourth Amendment and its objectively unreasonable standard." Id.

At this time, the court does not know whether the plaintiff was arrested pursuant to a warrant; if he was, that would mean that the judge issuing the warrant already had determined that probable cause existed to arrest him. Any of the events that took place before a judge had made a probable cause determination will be governed by the Fourth Amendment objectively unreasonable standard. Any of the events the plaintiff describes that took place after a judge made a determination of probable cause, but before conviction and sentencing, will be governed by the Fourteenth Amendment's "more demanding" deliberate indifference standard. Lopez, 464 F.3d at 718.

The court finds that, regardless of which of these two standards applies, the plaintiff has alleged sufficient facts to support claims that defendants Troopers D.L. Bergum and John Doe (who ignored the doctor's statement about

the plaintiff's medical condition, and did not convey his medical information to the staff at the Jail), Jail guard Carrie L. Bellen (who ignored the plaintiff's information about his condition and requests for medical care, and did not share the information with other Jail staff), Nurses Leslie, Tom, and Nicole (who delayed or refused the plaintiff medication and treatment), Lieutenant Friend (who claimed to be part of the medical staff and denied the plaintiff treatment), and Nurse Practitioner Jane Doe (who denied the plaintiff medical treatment) either were deliberately indifferent to his medical needs, or were objectively unreasonable in their treatment of him.

The plaintiff also has stated sufficient facts to support claims that defendants Patrick J. Noonan, Sergeant Melissa A. Gonzales, and Captain Wearing knew about the inadequate medical care the plaintiff received and failed to take action to make the situation better. If the plaintiff had sued these defendants solely because they were supervisors of other defendants, the court would not allow him to proceed; §1983 makes public employees liable "for their own misdeeds but not for anyone else's." Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir.2009); see George v. Smith, 507 F.3d 605, 609 (7th Cir.2007). But the plaintiff alleges that these defendants personally took or failed to take action based on information they'd received; that is enough for the court to allow him to proceed against those defendants personally.

The plaintiff's only claim against defendant Schmaling, however, is that he condoned the actions of his staff and allowed Wearing to answer a letter the

plaintiff sent to him. This is not enough to establish personal involvement by Schmaling. The court will dismiss him as a defendant.

2. Retaliation

Near the end of his complaint, the plaintiff suggests that he was allowed a mattress in segregation *before* he filed this lawsuit, but was not allowed the mattress in segregation *after* he filed the lawsuit. He implies that someone retaliated against him for filing the lawsuit by depriving him of the mattress. To state a First Amendment retaliation claim, the plaintiff must plead that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir.2009) (quoting Woodruff v. Mason, 542 F.3d 545, 551 (7th Cir.2008)). The plaintiff does not explicitly state that the mattress was taken away because he filed this lawsuit, but he implies as much. The problem with this claim, however, is that the plaintiff does not identify which defendant was responsible for taking away his mattress after he filed the lawsuit. The court will not allow the plaintiff to proceed on a retaliation claim, because he does not identify a defendant whom he believes retaliated against him.

3. Doe Defendants

The court has allowed the plaintiff to proceed on claims against Trooper John Doe and Nurse Practitioner Jane Doe. Once the other defendants have been served and have answered or otherwise responded to the complaint, the

plaintiff should use discovery requests to learn the true identities of the Doe defendants.

## II. Plaintiff's Motion for Court Order

On December 7, 2015, the plaintiff filed a motion for a court order or ruling. Dkt. No. 21. In the top, right-hand corner of this pleading, he put listed the case number as "14 CV 452." In the top left-hand corner, he noted that "Nurse Leslie et al" were the defendants. Id.

In the motion, the plaintiff stated that on July 15, 2015, he filed an amended complaint. He refers to the amended complaint as a "motion," and asks the court to rule on it. He also says that in August, he filed a motion to reconsider under Federal Rule of Civil Procedure 45, and asks the court for a ruling on that motion. Id.

With regard to the plaintiff's request that the court rule on his amended complaint, the court acknowledges that it has taken some time to screen that complaint. This order, however, constitutes the "ruling" that the plaintiff seeks, and thus his motion for a "ruling" on a "motion" is moot.

The plaintiff is mistaken when he states that he filed a motion for reconsideration in August; the plaintiff did not file any pleadings in this case between July 20 and September 23, 2015, and he has not filed any motions to reconsider in this case. The court notes that the plaintiff has filed numerous cases in this court; perhaps, in asserting that he filed a motion in August, he is confusing this case with one of his others. The court will deny the motion for a court order.

## III. <u>Plaintiff's Motion for Discovery and Production of Documents</u>

On January 15, 2016, the plaintiff filed a document entitled "Motion for Discovery and Production of Documents." Dkt. No. 39. Again, in the upper right-hand corner of the first page, he reflects the case number: 14 CV 452. In the upper left-hand corner of the first page, he lists all the defendants discussed above. <u>Id.</u> at 1.

This document both asks the court to expedite an order requiring the defendants to produce discovery, and lists various documents that he wants the defendants to produce. He suggests that he has had difficulty obtaining his medical records from the Racine County Jail. He indicates that he needs discovery in *this* case, because in <u>Williams v. Stauchie, *et al.*</u>, Case No. 14-CV-1078, the Jail has not provided him with discovery, and in <u>Williams v. Leslie, *et al.*</u>, Case No. 14-CV-452, this court has refused to order discovery. <u>Id.</u> at 1.

The court has not entered a formal scheduling order in this case, because up to now, the court had not screened the amended complaint. Until the court screens the complaint, it is not clear who the defendants will be, and so there is no way to serve those defendants with the complaint. The court does not issue a scheduling order until it has screened the complaint and identified the defendants against whom the plaintiff may proceed.

The court now has screened the amended complaint, and will order that it be served on the defendants against whom the court has allowed the plaintiff to proceed. Once they have answered, the court will issue a scheduling order. At that point, the plaintiff should serve his discovery requests (including his list

of documents that he wants them to produce) on the defendants. It is too soon for the plaintiff to serve those demands now; the defendants are not even aware that he has sued them.

The court also notes that the plaintiff argues that he is asking *this* court to order discovery because "District Judge Pamela Pepper[] will not order discovery in case no. 452." Id. The plaintiff again appears to have confused his cases. *This* is case number 14-cv-452. I—Judge Pepper—am the assigned district judge, but it is not true that I have *refused* to order discovery in this case. Again, until I screened the complaint, I could not order that the defendants be served, and so the defendants couldn't answer, and so it is premature for me to order discovery. The plaintiff's case in Williams v. Stauchie is in a different posture; it is a different case, and what happens in one case is not a basis for asking for relief in another case. The court observes that the defendant has so many open cases in this court that even he has trouble keeping up with them. The court is working through all of these cases; it will take time.

Because it is premature, the court will deny the plaintiff's motion for discovery and production of documents.

## IV. **<u>Plaintiff's Motion to Appoint Counsel</u>**

On December 31, 2015, the plaintiff filed a motion to appoint counsel. Dkt. No. 23. In that motion, he argues that he is unable to afford counsel, that this case is complex, and that he has very little knowledge of civil law and only a sixth grade level education. The plaintiff also submits that he has been moved from a handicap-accessible unit to an ordinary unit and, as a result, he cannot walk up and down the stairs. He also represents that he has been denied access to a distance wheelchair, so he cannot go to the law library to seek the continued help of the law clerk there. The plaintiff makes other allegations of retaliation, including the discontinuation of his psychiatric medication, which has caused his mental capacity to deteriorate. The plaintiff further indicates that he broke his hand on September 28, 2015, which affects his ability to write.

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. <u>Navejar v. Iyola</u>, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); <u>Ray v. Wexford Health Sources, Inc.</u>, 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on their own. <u>Pruitt v. Mote</u>, 503 F.3d 647, 653 (7th Cir. 2007). In another one of his cases, the plaintiff submitted several letters from attorneys declining to represent him. Although the requests and denials should be case-specific, the court will find that the plaintiff has met the threshold requirement under <u>Pruitt</u>.

As a result, the court must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

The plaintiff makes a number of serious allegations in this motion, and in the supporting documents. This case, however, is about the plaintiff's interactions with staff at the Racine County Jail. If he has separate retaliation or access-to-the-courts claims against staff members at Columbia (where he currently is incarcerated), he must allege those in a new, different complaint. This court must limit its inquiry to whether this plaintiff is competent to litigate this particular case, which involves claims regarding the medical care and accommodations he received after his arrest and during his time at the Jail. The court considers the plaintiff competent to litigate this case at this time, for the following reasons.

The defendants have not yet been served, and thus, they have not answered. Once they do, and the court enters a scheduling order, the plaintiff may use Federal Rules of Civil Procedure 33, 34, and 26, among others to obtain written discovery from the defendants regarding his claims.

Given the current posture of the case, the court sees no present need for the plaintiff to have access to the law library. When the time comes that he

does need to do legal research, and does need access to the law library, there may be alternative ways that the plaintiff may access case law, such as requesting cases without having to travel to the law library.

The plaintiff complains about an injured hand that makes it extremely difficult to write, but he has been able to file a number of hand-written documents in this case (and other cases) in the last month, and the court has been able to read them. The plaintiff also submits that since his psychotropic drugs were discontinued, his mental condition has deteriorated. Despite these assertions, the plaintiff has managed to file a number of very lucid, handwritten motions and other documents, not only in this case but in other actions he has pending before the court. For example, for this motion, he filed not only the motion itself, but also a brief in support of the motion, and a sworn declaration. The plaintiff's litigation of this case and others continues to demonstrate his competence to represent himself, and the court will deny his motion for appointment of counsel, without prejudice.

## V. Conclusion

The court **ALLOWS** the plaintiff to proceed on Fourth or Fourteenth Amendment claims regarding the medical care and accommodations he received (or did not receive) against defendants D.L. Bergum, Trooper John Doe, Carrie L. Bellen, Nurse Leslie, Nurse Tom, Nurse Nicole, Lieutenant Friend, and Nurse Practitioner Jane Doe. The court also **ALLOWS** the plaintiff to proceed on claims that defendants Patrick J. Noonan, Sergeant Melissa A.

Gonzales, and Captain Wearing knew about the inadequate medical care the plaintiff received and failed to take action to make the situation better.

The court **DISMISSES** Sheriff Christopher Schmaling as a defendant.

The court **ORDERS** that the United States Marshal shall serve a copy of the complaint and this order upon the remaining defendants pursuant to Federal Rule of Civil Procedure 4. The court advises the plaintiff that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

The court also **ORDERS** that the defendants who are served shall file a responsive pleading to the complaint.

The court **DENIES** the plaintiff's motion for court order. Dkt. No. 21. The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for appointment of counsel. Dkt. No. 23. The court **DENIES** the plaintiff's motion for discovery. Dkt. No. 27. The court also **DENIES** the plaintiff's motion for production of documents. Dkt. No. 27.

The court further **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

      Office of the Clerk
      United States District Court

Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. Each filing will be electronically scanned and entered on the docket upon receipt by the clerk. The plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should also retain a personal copy of each document filed with the court.

The court further advises the plaintiff that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 9th day of February, 2016.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**